IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| GREEN OAK HEDGE FUND, LTD., dba GREEN OAK TRADING COMPANY,<br><br>    Plaintiff,<br><br><br><br><br><br><br><br><br><br><br>    vs.<br><br><br>RICK HOPKINSON, E-CENTURION, ELITE TRADING INTERNATIONAL, MELISSA GILLES, JOHN GILLES, and CENTURION HOLDING INVESTMENTS, INC.,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT, GRANTING MOTION FOR ENTRY OF JUDGMENT AGAINST HOPKINSON, AND GRANTING MOTION FOR RULE 54(b) CERTIFICATION AS TO HOPKINSON<br><br><br><br><br><br>Case No. 2:06-CV-636 TS |

## I.  INTRODUCTION

Based upon a grant of partial summary judgment in its favor on one of its six claims

against Defendant Rick Hopkinson, Plaintiff moves for entry of judgment on that claim and

Rule 54(b) certification of such a partial judgment against Hopkinson.  Plaintiff also moves

1

for entry of default judgment against Defendants John Gilles and Melissa Gilles and for a

Rule 54(b)[1] certification of the default judgment.

## II.  PROCEDURAL BACKGROUND

The First Amended Complaint originally sought relief on seven claims against nine

defendants.  Three Defendants have been dismissed.[2]  The remaining defendants are

Hopkinson, E-Centurion, Inc. (E-Centurion), Elite Trading International, LLC (Elite), John

Gilles, Melissa Gilles (jointly, the Gilleses), and Centurion Holding Investments, Inc.

(Centurion).

The claims include six state law claims:  breach of contract, to pierce the corporate

veil, unjust enrichment, fraud, civil conspiracy, and attorney fees under Utah Code Ann. §

78-27-56; plus one federal claim, civil RICO.  The breach of contract and unjust enrichment

claims seek recovery of one debt of $816,952.50,[3] plus prejudgment interest at 4% per

month,[4] basically the same claim under different theories of recovery.  The Complaint does

not specify the amount of damages sought on the fraud and civil conspiracy claims, and

seeks "treble damages on the RICO claim.[5]   All of the claims arise from the same alleged

---

[1]Fed. R. Civ. P. 54(b).

[2]Defendants Hanni and Hoyle obtained dismissal pursuant to Fed. R. Civ. P. 12(b)(6).  *See* Docket No. 56.  Plaintiff voluntarily dismissed defendant Pacific Trading International.  *See* Docket No. 66.

[3]First Amended Complaint at ¶ 30, 37, and B & C at 14.

[4]For brevity, the Court will hereinafter refer collectively to the $816,952.50 claim and the claim of interest owed thereon as the $816,952.50 debt.

[5]*Id*. at 14, ¶ D.

transaction and the same alleged facts as follows:  Plaintiff invested in a plan to purchase, import, and resell computer processors and mobile phones. Pursuant to the plan or contract, it purchased 19 boxes of computer processors.  Those 19 boxes were diverted from the intended purchasers.  Plaintiff never received the repayment of its allegedly guaranteed investment.  Defendants all worked collectively to conceal from Plaintiff that it would not be repaid, to ensure that Plaintiff would not be repaid,[6] and to ensure Plaintiff would not receive its product (the 19 boxes).[7]  The RICO claim is also predicated on the same facts—the alleged racketeering enterprise being the Defendants' alleged scheme to collect the investments and ship the computer processors, with no intention of paying for the items,[8] and further alleges Defendants stole, or unlawfully and wilfully took possession of its goods.[9]  Even the claim for attorney fees under state law is based upon the alleged bad faith of Defendants in not paying the same $816,925.50 debt.[10]

---

[6]*Id.* at ¶ 52 (alleging Defendants worked together to ensure Plaintiff did not find out it would not be paid); *Id.* at ¶¶ 44, 54 and 71 (alleging each Defendant involved in attempts to ensure Plaintiff would not be paid).

[7]*Id.* at ¶ 71.

[8]First Amended Complaint at ¶ 77.  *See also id.*, at ¶¶ 80-82 (alleging predicate acts involving theft or diversion of boxes without paying for them).

[9]*Id*. at ¶ 82.

[10]*Id.* at ¶¶ 89-93; *But see Morganroth & Morganroth v. DeLorean*, 213 F.3d 1301 (10th Cir. 2000) (diversity case holding that pre-litigation conduct alone cannot support an award of attorney fees for bad faith).

The relief sought on the breach of contract and unjust enrichment claims is a judgment for the single debt of $816,952.50, jointly and severally against all Defendants.[11] The claim to pierce the corporate veil seeks to have the entity defendants—E-Centurion, Elite, and Centurion Holding—held jointly and severally liable with Hopkinson.[12]  Further, the Complaint also appears to assert joint and several liability for all claims.[13]

Plaintiff has obtained default against John Gilles and Melissa Gilles on all of its claims against them.[14]  Defendants Hopkinson, E-Centurion and Elite Trading have filed answers.[15]  Defendant Centurion Holding has not been served.

After the entry of default as to the Gilleses, dismissal under Rule 12(b)(6) of some claims as to E-Centurion,[16]  and the grant of partial summary judgment against Hopkinson, the remaining claims and defendants are as follows: breach of contract (E-Centurion, Elite, and Centurion Holding); to pierce the corporate veil (E-Centurion, Elite, and Centurion Holding); unjust enrichment (Hopkinson, E-Centurion, Elite, and Centurion Holding); fraud (Hopkinson, Elite, and Centurion Holding); civil conspiracy (Hopkinson, Elite, and Centurion

---

[11]First Amended Complaint, at ¶ 54 (breach of contract claim); *Id*. at ¶ 62 (claim to pierce corporate veil); *Id.* at ¶65 (unjust enrichment claim).

[12]*Id*. at ¶ 62.

[13]*Id*. at ¶ 45 (factual allegation adopted by reference for all claims alleging that Defendants should be jointly and severally liable for all damages in case).

[14]*See* Docket No. 15 (First Amended Complaint) and Docket No. 47 (clerk's certificate of default as to John Gilles and Melissa Gilles).

[15]Docket Nos. 30 and 35.

[16]*See* Docket No. 56, at 5-8 (finding fraud and civil conspiracy claims failed to state a claim against E-Centurion).

Holding); civil RICO (Hopkinson, E-Centurion, Elite, and Centurion Holding); and attorney fees (Hopkinson, E-Centurion, Elite, and Centurion Holding).

As noted above, based upon the grant of partial summary judgment in its favor on the breach of contract claim, Plaintiff seeks entry of a partial judgment against Hopkinson in the amount of the $816,952.50 debt and a Rule 54(b) certification of that partial judgment.

Plaintiff also moved for entry of a default judgment against the Gilleses and a Rule 54(b) certification of that debt.  Plaintiff subsequently sought an evidentiary hearing on its requested default judgment against the Gilleses because "part of the Plaintiff's claims are not for a sum certain based upon the Complaint."[17]  Thus, it appears that it seeks judgment in the amount greater than the $816,952.50 debt, presumably additional damages on the civil conspiracy and RICO claims.

Plaintiff subsequently sought an evidentiary hearing on its Motion for Judgment against Defendant Hopkinson, for the purpose of "outlining damages that should be awarded against" Hopkinson,[18] presumably the amount of the prejudgment interest accrued.  Plaintiff also represents that Rule 54(b) certification is necessary as to the partial judgment against Hopkinson because it is suffering serious financial damages awaiting a final judgment necessary to start collection activity against Hopkinson.[19]

---

[17]Docket Nos. 64, at 2 and 68 at 2.

[18]Docket Nos. 63 and 67.

[19]Docket No. 67, at 2.

The Court will first address the Motions for Entry of Judgment, and then address the Rule 54(b) certification issues.

### III.  DISCUSSION AND CONCLUSIONS

#### A.  Motion for Default Judgment Against the Gilleses

Under controlling Supreme Court case law, *Frow v. De La Vega*,[20] "when one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against that defendant until the matter has been adjudicated with regard to all defendants or all defendants have defaulted."[21]

As explained in *Frow*:

> The defaulting defendant has merely lost his standing in court.  He will not be entitled to service of notices in the cause, nor to appear in it in any way. He can adduce no evidence, he cannot be heard at the final hearing.  But if the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike-the defaulter as well as the others. If it be decided in the complainant's favor, he will then be entitled to a final decree against all. But a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal.[22]

---

[20]15 Wall. 552, 82 U.S. 552 (1872).

[21]10A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2690 (3d ed. 2005) (citing *Frow*) (hereinafter Wright & Miller); *Hunt v. Inter-Glove Energy, Inc.*, 770 F.2d 145, 147 (10th Cir. 1985) (holding that where complaint's claims were for fraud and securities violations, the Plaintiff having chosen to initiate a single claim involving joint liability, Plaintiff may not split its claim and proceed to damages against the defaulters and then proceed to a separate damages award against the answering defendants).

[22]82 U.S. at 554.  *See also Haines v. Fisher*, 82 F.3d 1503, 1511 (10th Cir. 1996) (holding that entry of judgment of zero against defaulting defendant proper where jury found no damages were proven).

However, a default judgment may be entered in some circumstances against *severally* liable defendants.[23]  But the *Frow* analysis has been extended to cases where Defendants have closely related defenses.[24]

Some courts consider that the *Frow* analysis has been applied inconsistently.[25]  In *Shanghai Automation Instrument Co., Ltd. v. Kuei*,[26] the court collects and analyzes the cases and treatises discussing *Frow* in connection with a Rule 54(b) certification request and reconciles them as follows:

> *Frow's* applicability turns not on labels such as "joint liability" or "joint and several liability," but rather on the key question of whether under the theory of the complaint, liability of all the defendants must be uniform.  Where *Frow* applies, it would be an abuse of discretion to enter a default judgment against some but not all defendants prior to adjudication of the claims against answering defendants.  Under these circumstances, there is, as a matter of law, "just reason for delay" of entry of judgment under Rule 54(b).
>
> On the other hand, where uniformity of liability is not logically required by the facts and theories of the case, the risk of inconsistent judgments is not sufficiently extreme to bar entry of default judgment as a matter of law.  In those situations, the Court concludes that it retains the discretion to balance

---

[23]*See* Wright & Miller, *supra* note 21, § 2690 and cases cited therein.

[24]Wright & Miller, *supra* n.21; *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001) (holding "it would be incongruous and unfair to allow the Trustee to prevail against Defaulting Defendants on a legal theory rejected by the bankruptcy court with regard to the Answering Defendants in the same action"); *Gulf Coast Fans, Inc. v. Midwest Elecs. Imps. Inc.*, 740 F.2d 1499, 1512 (11th Cir. 1984) (applying *Frow* and vacating default judgment against defaulting defendant for breach of contract because even though defendants not jointly liable because jury found contract was not breached).

[25]*See Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1006-1009 (N.D. Cal. 2001) (noting some courts have held that authoritative treatises appear to present divergent views on application of *Frow*).

[26]*Id.*

7

various factors in deciding whether to enter judgment against less than all defendants permitted under Rule 54(b).[27]

In the present case, liability under the conspiracy claim will be joint and several.[28] Liability under the civil RICO claim will be joint and several.[29]  Uniformity of liability in that situation is logically required.  Therefore, under *Frow*, it would be an abuse of discretion to enter a default judgment against the Gilleses prior to adjudication of the conspiracy and RICO claims against the answering defendants, including Hopkinson.   Further, where the same transaction and factual allegations underlay many of the other claims, the answering Defendants may have closely related defenses sufficient to trigger the application of *Frow*.

Accordingly, the Court denies the Motion for Entry of Default Judgment against the Gilleses at this time.

B.      Plaintiff's Related Motions Re: Gilleses

The Court's ruling on the Motion for Entry of Judgment against the Gilleses renders moot the remaining Motions relating to the proposed Gilles judgment and all will be denied.

C.      Motion for Entry of Judgment as to Hopkinson

---

[27]*Id*. at 1008-09 (citations and footnote omitted).

[28]*See Jedrziewski v. Smith,* 128 P.3d 1146, 1149 (Utah 2005) (holding that the Utah Liability Reform Act "does not, nor could it constitutionally, reach the domain of civil conspiracy" for which liability is joint and several).

[29]*United States v. Phillip Morris USA*, 316 F. Supp. 2d 19, 27 and n.8 (D.D.C. 2004) (collecting cases and noting that "[e]very circuit in the country that has addressed the issue has concluded that the nature of both civil and criminal RICO offenses requires imposition of joint and several liability because all defendants participate in the enterprise responsible for the RICO violation.").

Because the only claim for which Plaintiff is seeking a partial judgment as against Hopkinson is the breach of contract claim, upon which it was granted summary judgment on the merits, *Frow* does not apply.

As noted in the order granting partial summary judgment against Hopkinson, the amount of damages for the claim of breach of oral contract was liquidated at $816,952.50.[30]  However, because "the record does not reflect the necessary date" the issue of the date from which prejudgment should run was reserved.[31]  Plaintiff now submits that date that liability became fixed in the amount of $816,952.50 was the date of the November 7, 2005 trade regarding the 19 boxes.[32]  Because this date is fixed, there is no reason for an evidentiary hearing as the liability on the breach of contract claim was for a sum certain in the First Amended Compliant.

Because the breach of contract claim is a state law claim, the Court applies Utah state law to the prejudgment interest issue.[33]  As alleged in the First Amended Complaint and in the materials supporting the award of partial summary judgment, the parties' oral

---

[30]Docket No. 57, at 3.

[31]*Id.*; *See Saleh v. Farmers Ins. Exchange,* 133 P.3d 428, 436 (Utah 2006) ("Prejudgment interest may be recovered where the damage is complete, the amount of the loss is fixed as of a particular time, and the loss is measurable by facts and figures.").

[32]Docket No. 61.

[33]*Hofer v. Unum Life Ins. Co. of America*,  441 F.3d 872, 878 (10th Cir. 2006) ("Prejudgment interest in a diversity action is . . . a substantive matter governed by state law.") (quoting *Webco Indus., Inc. v. Thermatool Corp.*, 278 F.3d 1120, 1134 (10th Cir. 2002)).

9

contract specified the rate of interest as 4% per month.[34]  Because the parties specified the contract rate, that rate, rather than the statutory default rate applies.[35]  Thus, there is not a claim for 4% interest per month, plus prejudgment interest.  Instead, the 4% per month interest is the prejudgment interest rate.  Post judgment interest is determined as a matter of federal law[36] at the rate specified in 28 U.S.C. § 1961 as of the date of entry of the judgment.

Under Utah law, prejudgment interest for breach of contract "may be recovered where the damage is complete, the amount of the loss is fixed as of a particular time, and the loss is measurable by facts and figures."[37]  The Court grants Plaintiff's Motion for Entry of Partial Judgment against Hopkinson in the amount of $816,952.50, plus prejudgment interest at the rate of 4% per month from November 7, 2005, and interest at the post judgment rate provided by federal law after the entry of the judgment.

D.     Motion for Rule 54(b) Certification of Partial Judgment against Hopkinson

Federal Rule of Civil Procedure 54(b) provides:

When more than one claim for relief is presented in an action, . . . , or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than

---

[34]Docket No. 61 (citing Colodne Aff.) and First Amended Complaint at ¶ 50.

[35]Utah Code Ann. § 15-1-1 (1) ("Parties to a lawful contract may agree upon any rate of interest . . .") and (2) ("*Unless* parties to a lawful contract specify a different rate of interest, legal rate . . . shall be 10% per annum.") (emphasis added).

[36]*Everaard v. Hartford Accident & Indemnity Co*., 842 F.2d 1186, 1193-94 (10th Cir. 1988) (holding that post-judgment interest applies to federal court judgments, even in diversity actions).

[37]*Saleh,* 133 P.3d at 436.

> all of the claims or parties only upon an express determination
> that there is no just reason for delay and upon an express
> direction for the entry of judgment.

"If the judgment does not dispose of all claims among all the parties, . . ., it can be made final only by an express direction for the entry of judgment" under Rule 54(b).[38]  As discussed above, there are many claims and many parties left in this case. Further, with three defendants[39] remaining for trial, entry of judgment as to Hopkinson and the Gilles would be for fewer than all of the parties.  In such a situation, the Tenth Circuit has explained what is required before a Rule 54(b) certification can be entered:

> We have explained that courts entering a Rule 54(b) certification should "clearly articulate their reasons and make careful statements based on the record supporting their determination of 'finality' and 'no just reason for delay' so that we can review a 54(b) order more intelligently and thus avoid jurisdictional remands." In *Oklahoma Turnpike Auth. v. Bruner*, we discussed at length the requirements of Rule 54(b) certification.  We noted certification is appropriate only when the district court "adheres strictly to the rule's requirement that a court make two express determinations." First, the district court must determine that its judgment is final.  Second, the district court must determine that no just reason for delay of entry of its judgment exists.  In making these determinations, the district court should act as a "dispatcher" weighing Rule 54(b)'s policy of preventing piecemeal appeals against the inequities that could result from delaying an appeal.  Factors the district court should consider are "whether the claims under review are separable from the others remaining to be adjudicated and whether the nature of the claims already determined are such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals."[40]

---

[38]Wright and Miller, *supra* note 21, § 3914.5. at 525.

[39]Namely, E-Centurion, Elite Trading, and Centurion Holding.

[40]*Gross v. Pirtle*, 116 Fed. Appx. 189, (10th Cir. 2004) (quoting *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 7-8 (1980); *Oklahoma Turnpike*, 259 F.3d 1236, 1241-42 (10th Cir. 2001); *Old Republic Ins. Co. v. Durango Air Serv., Inc.*, 283 F.3d 1222, 1225 n.5 (10th Cir. 2002)).

Plaintiff has submitted nothing on these factors.  Instead, the Motion for certification of judgments against Hopkinson Rule 54(b) is not accompanied by a memorandum[41] and contains merely the conclusory statement that there is no just reason for delay.

This case is particularly difficult because, as noted above, Plaintiff chose to plead all of the claims as having joint and several liability.  Thus, although liability for breach of contract is usually several and Rule 54(b) certification would be applicable, the allegation of joint and several liability raises the issue of whether the claim is fully liquidated as to Hopkinson.  Similarly, the fact that the breach of contract claim sought recovery of the same $816,952.50 as the unjust enrichment claim raises the question of whether it is a distinct claim.[42]  Again, because it submitted no memorandum Plaintiff makes no argument on the distinctiveness issue although it has the burden on its Rule 54(b) motion.

The Court concludes that the Hopkinson's liability for the breach of contract, despite the allegation of joint liability, is several.  Similarly, although they are alternative theories, the Court finds that the breach of contract and unjust enrichment claims are distinct claims. Plaintiff may not have double recovery on those claims, but that is a separate issue to be addressed pursuant to the determination of the unjust enrichment claim.  Considering the next factor, the Court finds that the nature of the allegations against Hopkinson on the

---

[41] *See* Docket No. 60, at 2, ¶ 6 ("Based upon the nature of this Motion, there is no need to file an accompanying Memorandum of Law.").

[42] *See Tubos de Acero de Mexico, S.A. v. Am. Intern. Inv. Corp., Inc.*,  292 F.3d 471, 485 (5th Cir. 2002) ("When some of the same facts form the basis for several claims, the existence of separate claims for purposes of Rule 54(b) depends on an analysis of their distinctness.").

breach of contract claim are different enough "such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals."[43]  The Court finds that the judgment is final as to that claim.

When considering whether there is any just reason for delay, the Court considers Plaintiff's allegation that it is suffering financial hardship in the delay in enforcing the already determined liability of Hopkinson on the breach of contract claim.[44]  The Court notes that Hopkinson originally defaulted in this case, subsequently obtained a setting aside of that default, filed an Answer, and then failed to respond to the Motion for Partial Summary Judgment against him or any of the present motions.

Having considered all of the factors and the entire record of this case the Court finds that there is no just reason for delay.  Having determined that an award of partial judgment is final as to Hopkinson on that claim, and that there is no just reason for delay, the Court certifies the Partial Summary Judgment under Rule 54(b).

IV.  ORDER

Based upon the foregoing, it is

ORDERED that Plaintiff's Motion for Default Judgment against John Gilles and Melissa Gilles (Docket No. 58) is DENIED.  It is further

---

[43]*Id.*

[44]*See Shanghai Automation*, 194 F. Supp. 2d at 1010 (considering "danger that any damages awarded is likely to become increasingly uncollectible with the passage of time" in connection with whether there was any just reason for delay for Rule 54(b) purposes).

13

ORDERED that Plaintiff's Requests for Evidentiary Hearing Regarding Default Judgment against Defendants Gilles (Docket Nos. 64 and 67) are DENIED as moot.  It is further

ORDERED that Plaintiff's Motions for an Evidentiary Hearing Regarding Judgment Against Defendant Hopkinson (Docket Nos. 63 and 68) are DENIED.  It is further

ORDERED that Plaintiff's Motion for Entry of Judgment as to Rick Hopkinson (Docket No. 60) is GRANTED.  It is further

ORDERED that Plaintiff's Motion for Judgment Under Rule 54(b) (Docket No. 59) is GRANTED for the reasons set forth above.

DATED  January 14, 2008.

BY THE COURT:

_____

TED STEWART